**SO ORDERED.**

**SIGNED this 30th day of May, 2014.**

*Lena Mansori James*
LENA MANSORI JAMES
UNITED STATES BANKRUPTCY JUDGE



UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
DURHAM DIVISION

| | |
|---|---|
| IN RE: )<br>)<br>CHARLES FRANCIS PATERNO, JR. )<br>and )<br>JACQUELINE NYE PATERNO, )<br>)<br>　　　Debtors. )<br>_____) | Case No. 14-80278<br><br>Chapter 11 |

**MEMORANDUM OPINION AND ORDER**

THIS MATTER came before the Court for hearing on May 22, 2014, after due and proper notice, upon Motion by ArborOne FLCA ("ArborOne") to Convert Chapter 11 Case to Chapter 7 pursuant to 11 U.S.C. § 1112 and Federal Rules of Bankruptcy Procedure 1017, 9013, and 9014. Appearing before the Court was James White and Michelle Walker, counsel for Charles Francis Paterno, Jr. and Jacquelyn Nye Paterno (collectively, the "Debtors"); Christine Myatt, counsel for ArborOne; and Robert E. Price, Jr. on behalf of the Bankruptcy Administrator's office. The male Debtor, Charles Francis Paterno, Jr. ("Mr. Paterno"), also appeared and testified before the Court. Following the hearing, and upon consideration of the motion to convert, the responses thereto, the arguments of counsel, and the testimony of Mr.

Paterno, and for the reasons that follow, the Court will deny the motion to convert without prejudice.

## I. PRE-PETITION BACKGROUND

Beginning in the early 2000s, Mr. Paterno became actively involved in the promotion of autoclaved aerated concrete ("AAC"), a thermally insulating lightweight concrete-based product used for internal and external construction. As a substantial shareholder in Carolina AAC, LLC ("Carolina AAC") and Carolina AAC Development, LLC ("Carolina AAC Development"), Mr. Paterno initiated construction on an AAC plant in South Carolina in 2010. Funding for this construction was provided primarily by ArborOne through the purchase of bonds. Specifically, on November 30, 2010, Carolina AAC made, executed, and delivered a series of Senior Secured Private Placement Taxable Bonds, Series 2010A, in the aggregate principal amount of $6,361,200.00, and a series of Senior Secured Taxable Private Placement Bonds, Series 2010B, in the aggregate principal amount of $706,800.00 pursuant to a Trust Indenture dated November 1, 2010, wherein Carolina AAC agreed to issue and ArborOne agreed to purchase the bonds. On that same date, Carolina AAC Development similarly made, executed, and delivered a series of Senior Secured Private Placement Taxable Bonds, Series 2010A, in the aggregate principal amount of $3,033,000.00, and a series of Senior Secured Taxable Private Placement Bonds, Series 2010B, in the aggregate principal amount of $337,000.00 pursuant to a Trust Indenture dated November 1, 2010, wherein Carolina AAC Development agreed to issue and ArborOne agreed to purchase the bonds. The bonds purchased by ArborOne for both companies totaled $10,438,000.00.

To secure payment on these bonds, Carolina AAC Development provided ArborOne with a mortgage and security agreement against real property located in Marlboro County, South

Carolina and Marion County, South Carolina. ArborOne further received and recorded a lien against all assets of Carolina AAC Development, Carolina AAC, and Lide Smith Farms, and an Assignment of Leases and Rents on December 1, 2010. For further security, the Debtors each absolutely and unconditionally guaranteed to ArborOne the due and punctual payment of all liabilities and obligations of Carolina AAC and Carolina AAC Development.

Unfortunately, after almost two years of construction, the general contractor for the South Carolina plant committed suicide and construction ceased. Construction on the plant has not resumed to date. Following the general contractor's death, ArborOne declared the entire balance under the bonds to be immediately due and payable, and announced that the bonds were in default. It is disputed as to what amount, if any, the surety paid on the bonds following their default and whether any amount remains due from the surety.

On July 12, 2013, ArborOne commenced two legal proceedings against the Debtors in the Superior Court of Orange County, North Carolina. The first case asserted a claim for the outstanding balance owed under the Carolina AAC Bonds and Guaranties. The second case asserted a claim for the outstanding balance owed under the Carolina AAC Development Bonds and Guaranties. On January 23, 2014, the Superior Court entered an Amended Order Granting Plaintiff's Motion for Summary Judgment Against Defendants Nunc Pro Tunc in favor of ArborOne in both cases. The amount granted to ArborOne for the Carolina AAC bonds was $7,092,225.13 plus interest, and the amount granted to ArborOne for the Carolina AAC Development bonds was $3,381,550.76 plus interest.

In light of these judgments, the Debtors liquidated approximately $433,000.00 of stocks pre-petition, and Mr. Paterno requested early disbursements from his two lifetime pensions with Sonoco Products Company. These pensions provide Mr. Paterno with approximately $6,600.00

per month in income. However, despite the Debtors' attempts to work with ArborOne to pay the debt, ArborOne commenced foreclosure proceedings against Carolina AAC, Carolina AAC Development, and Lide Smith Farms. The foreclosure sales are scheduled to be held June 10, 2014 and June 16, 2014.

## II. THE BANKRUPTCY FILING

The Debtors filed a petition for relief under Chapter 11 of the Bankruptcy Code on March 14, 2014. As of this date, the sum owed by the Debtors to ArborOne as guarantors was $11,124,072.98 exclusive of costs and attorney's fees. According to the Debtors' Schedule I, Mr. Paterno is currently self-employed and receives $6,383.64 from his pension and $3,000.00 as a consulting and management fee from Carolina AAC. Although Mr. Paterno has a consulting services contract with Carolina AAC for $15,000.00 per month, he last received a consulting fee in early March 2014. Mr. Paterno deferred his remaining fees due to Carolina AAC's lack of funding, and is owed approximately $1,500,000.00 from the company to date. Mr. Paterno's wife is currently unemployed, and their monthly net income is $1,092.81.

On April 29, 2014, before any monthly operating reports had been submitted, ArborOne filed a Motion to Convert Chapter 11 Case to Chapter 7. In support of this motion, ArborOne argues that the Debtors have no reasonable likelihood of rehabilitation, and that there is substantial or continuing loss to the estate. ArborOne premises this argument on the Debtors' Schedules of Assets, Statement of Financial Affairs, and other documents filed with the Court.

On April 30, 2014, the Debtors filed their first monthly operating report for the period of March 14, 2014 through March 31, 2014. This operating report showed a total income of $0.00 and total expenses of $3,587.13. At the start of the month, the Debtors had $7,924.17 in cash on hand, and they had $4,337.04 at the end of the month. As a result, their first monthly report

reflected a cash loss in the amount of $3,587.13. The Debtors' second monthly operating report was timely filed on May 21, 2014, the day before the hearing on the motion to convert. This document reported monthly income of $14,403.62 and expenses of $12,404.45. Cash on hand at the start of the month totaled $4,337.04 and increased to $6,336.21 by the end of the month. The Debtors' net income for the month was $1,999.17.

At the May 22, 2014 hearing, Mr. Paterno testified to his background in AAC, his future job prospects, his wife's education and teaching history, his monthly expenses, and his aggressive efforts to find a "white knight" investor for Carolina AAC. Mr. Paterno informed the Court that as of May 22, 2014, there had been no cash infusions into Carolina AAC for approximately eight weeks, and the company was operating with only one employee who had deferred his last two paychecks. Mr. Paterno stated that even if he did not receive his projected monthly $3,000.00 consulting fee from Carolina AAC, he and his wife could easily secure that money to help fund a plan through teaching or consulting with other businesses. Nonetheless, Mr. Paterno did acknowledge that neither he nor his wife had secured any employment outside Carolina AAC in the past two years.

### III.  LEGAL ANALYSIS

ArborOne seeks conversion of this case to Chapter 7 for "cause" pursuant to 11 U.S.C. § 1112(b)(4)(A). Subject to limited exceptions, § 1112(b)(1) provides that "the court shall convert a case under this chapter to a chapter 7 or dismiss a case . . . whichever is in the best interests of creditors and the estate, *for cause*" unless appointment of a Chapter 11 trustee is in the best interest of creditors and the estate. 11 U.S.C. § 1112(b)(1) (2013) (emphasis added). In determining whether "cause" exists, the court must conduct a fact-specific inquiry of the debtor's *post-petition* circumstances, and may exercise its discretion. *In re Creekside Sr. Apartments,*

5

*L.P.*, 489 B.R. 51, 60 (B.A.P. 6th Cir. 2013); *In re Motel Prop., Inc.*, 314 B.R. 889, 894 (Bankr. S.D. Ga. 2004). Section 1112(b)(4) provides a non-exclusive list of circumstances constituting cause; however, the applicability of each factor depends on where the debtor is in the bankruptcy reorganization process. *In re Gateway Access Solutions, Inc.*, 374 B.R. 556, 561 (Bankr. M.D. Pa. 2007).[1]

Specifically, pursuant to § 1112(b)(4)(A), cause exists to dismiss or convert a case if the movant establishes (1) "substantial or continuing loss to or diminution of the estate" post-petition, and (2) the "absence of a reasonable likelihood of rehabilitation." 11 U.S.C. § 1112(b)(4)(A). This is a two-fold inquiry, and the party seeking conversion bears the burden of proof by a preponderance of the evidence. *In re Modanlo*, 413 B.R. 262, 270 (Bankr. D. Md. 2009); *In re Gateway Access Solutions, Inc.*, 374 B.R. at 561. The Court must deny the motion to convert or dismiss if the movant fails to satisfy either prong.

A.     <u>Substantial or Continuing Loss to or Diminution of the Estate</u>

The first prong requires the Court to determine whether, post-petition, there has been a substantial or continuing loss to or diminution of the estate. 11 U.S.C. § 1112(b)(4)(A); *In re Landmark Atlantic Hess Farm, LLC*, 448 B.R. 707, 713 (Bankr. D. Md. 2011); *see In re Miller*, 496 B.R. 469, 479 (Bankr. E.D. Tenn. 2013) (noting that the loss must be post-petition). This test is often met by showing that the debtor suffered or has continued to experience a negative cash flow or declining asset values following the entry of the order for relief. *In re Landmark Atlantic Hess Farm, LLC*, 448 B.R. at 713-14, 723. This loss or decline in value must be either *substantial* or *continuing*, but need not be both. *In re Creekside Sr. Apartments, L.P.*, 489 B.R. at

---

[1] Section 1112(b)(3) requires the Court to commence a hearing upon a motion to convert or dismiss made by a party in interest within thirty days of the filing of the motion and render its decision on the motion no more than fifteen days after the commencement of the hearing, unless the movant agrees otherwise or compelling circumstances exist. 11 U.S.C. § 1112(b)(3) (2013).

61; *see In re Landmark Atlantic Hess Farm, LLC*, 448 B.R. at 714 ("With the addition of the word 'substantial,' Congress had indicated that a loss need not be continuing."). When examining this prong, courts often look at the debtor's track record, including the financial prospects of the debtor and the financial records filed with the court. *In re Gateway Access Solutions, Inc.*, 374 B.R. at 562, 564; *see In re Vallambrosa Holdings, LLC*, 419 B.R. 81, 88 (Bankr. S.D. Ga. 2009) (stating that "the Court must fully evaluate the present condition of the Debtor's estate and look beyond financial statements"). An inability on the part of the debtor to pay current expenses as they come due, combined with an absence of reliable income can satisfy this standard. *In re Park*, 436 B.R. 811, 816 (Bankr. W.D. Va. 2010); *In re Gateway Access Solutions, Inc.*, 374 B.R. at 564; *see In re Miell*, 419 B.R. 357, 366 (Bankr. N.D. Iowa 2009) ("Negative cash flow alone can be sufficient cause to dismiss or convert under § 1112(b).").

   The Bankruptcy Court for the Middle District of Pennsylvania, for example, converted a case to Chapter 7 where the debtor's seven monthly operating reports showed a sharp decline in the debtor's cash position. *In re Gateway Access Solutions, Inc.*, 374 B.R. at 564. During the period between January 1, 2007 and July 31, 2007, the debtor's earnings were only $30,671.00 and his disbursements were over $335,800.00. *Id.* Thus, the debtor's financial records showed a pattern of substantial continuing losses over approximately seven months. *Id.* Similarly, *In re Alston*, the District Court for the Eastern District of Pennsylvania determined that this prong was satisfied where the debtor's "monthly operating reports disclose[d] that he was operating at a deficit of approximately $2,000 in December alone and over $31,000 during the first six months his bankruptcy case was pending." No. 13-1855, 2013 WL 6210249, at *6 (E.D. Pa. Nov. 27, 2013). The debtor had no income, as he was unemployed and a full-time student. *Id.*

Comparably, the Bankruptcy Court for the Western District of Virginia found cause to convert or dismiss the case where the aggregate picture painted by the operating reports was "bleak." *In re Park*, 436 B.R. at 816. The court determined that the company had no reliable source of income and, with the exception of March 2010, was unable to pay its expenses from January 2010 to June 2010. *Id.* In January 2010, for instance, the company's operating report showed a monthly income of $0.00, monthly expenses of $10,065.32, and monthly cash loss of $10,065.32. *Id.* Moreover, the debtor's company in *Park* lost approximately $426,415.97 in equity post-petition. *Id.* at 817. Analogously, the Bankruptcy Court for the District of South Carolina found that this prong was met where negative cash flow—as reflected in the schedules and operating reports—continued for seven months and the cash available for operations continually declined each month. *In re Ashley Oaks Dev. Corp.*, 458 B.R. 280, 285 (Bankr. D.S.C. 2011); *see In re ARS Analytical, LLC*, 433 B.R. 848, 862 (Bankr. D.N.M. 2010) (dismissing a Chapter 11 case where the debtor lost $319,500.00 in the first four months after filing bankruptcy); *In re Wallace*, No. 09-20496-TLM, 2010 WL 378351, at *3 (Bankr. D. Idaho 2010) (finding continuing and substantial loss where the debtors had $122,000.00 in cash on hand when they filed bankruptcy in May and only had $4,600.00 by October of that same year); *see also In re Forest Grove, LLC*, 448 B.R. 729, 742 (Bankr. D.S.C. 2011) (dismissing the case where the debtor's monthly operating reports showed no income and the manager of the debtor's property failed to pay $2,000.00 per month in rent); *In re Om Shivai, Inc.*, 447 B.R. 459, 464 (Bankr. D.S.C. 2011) (finding continuing loss where the debtor had a positive net income in only four of eight months, and experienced a net loss of $3,856.03 over an eight-month period).

In contrast, however, the Bankruptcy Court for the Eastern District of North Carolina refused to convert or dismiss a Chapter 11 case where the evidence was ambiguous as to whether

8

the debtors' company suffered from a negative cash flow. *In re Gregory & Parker, Inc.*, No. 12-01382-8-SWH, 2013 WL 2285671, at *4 (Bankr. E.D.N.C. May 23, 2013). The court concluded that the debtors were financially stronger post-petition than pre-petition, and therefore the movant failed to meet its burden. *Id.* at *5.

In the present case, the Debtors have filed only two monthly operating reports and have been in bankruptcy less than three months. Although the first monthly operating report showed an income of $0.00, this report was only for a sixteen-day period and excluded Mr. Paterno's pension payment for the month of March. While the net income listed on their first monthly operating report was negative, the Debtors had positive net income of $1,999.17 for the second monthly operating report, with total income being $14,403.62. The Debtors' cash on hand as of April 30, 2014, was $6,336.21.

Despite these positive figures, ArborOne argues that the Debtors failed to obtain employment for the past two years, liquidated approximately $433,000.00 of stock, survived solely on credit card debt, and failed to pay their tax liability. These events, however, all occurred pre-petition and are therefore irrelevant to the current inquiry. The record reflects that the Debtors have not sold any assets or incurred any credit card debt since the petition date. ArborOne's argument is premised solely on the Debtors' Schedules of Assets, monthly operating reports, and Statement of Financial Affairs. ArborOne does not dispute the accuracy of these documents and did not present any additional evidence at the hearing. Therefore, the court finds that ArborOne has failed to show any substantial or continuing post-petition loss to the estate. The first prong required for conversion is not satisfied.

B.  Reasonable Likelihood of Rehabilitation

Rehabilitation is a more demanding standard than reorganization, and is defined by whether the debtor will be able to reestablish his business on a firm, sound basis. *In re Creekside Sr. Apartments, L.P.*, 489 B.R. at 43; *In re Westgate Prop., Ltd.*, 432 B.R. 720, 723 (Bankr. N.D. Ohio 2010). "Determining whether there is a likelihood of rehabilitation is not a technical test of whether the debtor can confirm a plan, but rather, whether the debtor's business prospects justify continuance of the reorganization effort." *In re Vallambrosa Holdings, LLC*, 419 B.R. at 89 (internal quotation marks omitted). In this manner, rehabilitation is understood as referring to the debtor's ability to restore the viability of its business. *Loop Corp. v. U.S. Tr.*, 379 F.3d 511, 516 (8th Cir. 2004). Where a debtor proposes a plan of pure liquidation, there is no likelihood of rehabilitation. *In re BHS & B Holdings, LLC*, 439 B.R. 342, 347 (Bankr. S.D.N.Y. 2010); *see In re Costa Bonita Beach Resort Inc.*, 479 B.R. 14, 43 (Bankr. D.P.R. 2012) ("Whereas confirmation of a plan could include a liquidation plan, rehabilitation does not include liquidation.") (internal quotation marks omitted). Thus, "rehabilitation depends upon establishing a cash flow from which current obligations can be satisfied." *In re Ashley Oaks Dev. Corp.*, 458 B.R. at 285 (internal quotation marks omitted); *see In re Schriock Constr., Inc.*, 167 B.R. 569, 576 (Bankr. D.N.D. 1994). This prospect must be premised on objective facts, not merely speculative data, and is determined by the Court based on evidence presented at the hearing. *In re Schriock Constr., Inc.*, 167 B.R. at 576; *In re Gateway Access Solutions, Inc.*, 374 B.R. at 562.

In the present case, the Court need not reach this second prong of the test as ArborOne has failed to meet its burden to show a substantial or continuing loss to the estate. The conjunctive phrasing of § 1112(b)(4)(A) therefore precludes ArborOne's argument on rehabilitation. The Court merely notes that while ArborOne's motion to convert relies heavily

10

upon the argument that the rehabilitation of Carolina AAC and Carolina AAC Development appears unlikely, Mr. and Mrs. Paterno are the debtors in this case, not Carolina AAC and Carolina AAC Development.

## IV.  CONCLUSION

Based on the foregoing, it is therefore ORDERED that ArborOne's motion to convert is denied without prejudice.

**END OF DOCUMENT**

Parties to be served
14-80278 C-11
Charles and Jacquelyn Paterno

James C. White
Law Offices of James C. White
P.O. Box 16103
Chapel Hill, NC 27516-6103

Charles and Jacquelyn Paterno
405 Meadowmont Lane
Chapel Hill, NC 27517

Christine Myatt
Nexsen Pruet
701 Green Valley Rd. Suite 100
P.O. Box 3463
Greensboro, NC 27402

William P. Miller
Bankruptcy Administrator
P.O. Box 1828
Greensboro, NC 27402